UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:25-cr-35-CEM-UAM

JAMES HJELMELAND

**NOTICE OF MAXIMUM PENALTIES, ELEMENTS OF OFFENSE,
PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS**

The United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, hereby files this Notice of Maximum Penalties, Elements of Offense, Personalization of Elements and Factual Basis, stating as follows:

ESSENTIAL ELEMENTS

The essential elements of count one, a violation of 18 U.S.C. § 2422(b), Attempted Enticement of a Minor to Engage in Sexual Activity, are as follows:

<u>First</u>: the Defendant knowingly intended to persuade, induce, entice, or coerce an individual who had not obtained the age of 18 years to engage in sexual activity, as charged;

<u>Second</u>: the Defendant used the Internet, or a cellular telephone to do so;

<u>Third</u>: at the time, the Defendant believed that the individual was less than 18 years old;

<u>Fourth</u>: if the sexual activity had occurred, one or more of the individuals engaging in sexual activity could have been charged with a criminal offense under the law of Florida; and

|        |                                                          |
|--------|----------------------------------------------------------|
| Fifth: | the Defendant took a substantial step towards committing the offense. |

The essential elements of counts two, a violation of 18 U.S.C. § 2252A(a)(2), Distribution of Child Pornography, are as follows:

|        |                                                          |
|--------|----------------------------------------------------------|
| First: | the Defendant knowingly distributed an item or items of child pornography; |
| Second: | the item of child pornography had been transported, or shipped, or mailed in interstate or foreign commerce including by computer; and |
| Third: | when the Defendant distributed the item, the Defendant believed the item was or contained child pornography |

The essential elements of count three, a violation of 18 U.S.C. § 2252A(a)(2), Distribution of Child Pornography, are as follows:

|        |                                                          |
|--------|----------------------------------------------------------|
| First: | the Defendant knowingly distributed an item or items of child pornography; |
| Second: | the item of child pornography had been transported, or shipped, or mailed in interstate or foreign commerce including by computer; and |
| Third: | when the Defendant distributed the item, the Defendant believed the item was or contained child pornography |

The essential elements of count four, a violation of 18 U.S.C. § 2252A(a)(1), Transportation of Child Pornography, are as follows:

|        |                                                          |
|--------|----------------------------------------------------------|
| First: | the Defendant knowingly transported an item or items of child pornography, as charged; and |
| Second: | when the Defendant transported the item, the Defendant believed the item was or contained child pornography |

The essential elements of count five, a violation of 18 U.S.C.§ 2252A(a)(5)(B), Possession of Child Pornography, are as follows:

<u>First</u>: the Defendant knowingly possessed an item or items of child pornography;

<u>Second</u>: the items of child pornography had been shipped and transported using any means and facility of interstate and foreign commerce;

<u>Third</u>: when the Defendant possessed the items, the Defendant believed the items were child pornography; and

<u>Fourth</u>: the visual depiction involved a minor who had not attained 12 years of age.

## PENALTY

The penalty for the offense charged in count one of the Indictment is a mandatory minimum sentence of 10 years' up to life imprisonment, minimum 5 years of supervised release up to life, a fine of up to $250,000, $100 special assessment and mandatory restitution.

The penalty for the offense charged in counts two and three of the Indictment is a mandatory minimum sentence of 15 years' up to 30 years' imprisonment, minimum of 5 years of supervised release up to life, a fine of up to $250,000, $100 special assessment, and mandatory restitution.

The penalty for the offense charged in count four of the Indictment is a mandatory minimum sentence of 5 years' up to 20 years' imprisonment, minimum of

5 years of supervised release up to life, a fine of up to $250,000, a special assessment of $100, and mandatory restitution.

The penalty for the offense charged in count five of the Indictment is up to 20 years' imprisonment, minimum of 5 years of supervised release up to life, a fine of up to $250,000, a special assessment of $100, and mandatory restitution.

Additionally, the defendant must forfeit property, pursuant to 18 U.S.C. §§ 2428 and 2253, as outlined in the Indictment. Among the items that will be forfeited are the following: a Samsung Galaxy S24 cellphone, which was seized from the defendant on or about January 24, 2025.

## PERSONALIZATION OF ELEMENTS

Count One:

First: Did you knowingly intend to persuade, induce, entice, or coerce an individual who had not attained the age of 18 years to engage in sexual activity, as charged?

Second: Did you use a means or facility of interstate commerce to do so?

Third: Did you at the time, believe that the individual was less than 18 years old?

Fourth: If the sexual activity had occurred, could you have been charged with a criminal offense under the law of Florida?

  <u>Fifth</u>:  Did you take a substantial step towards committing the offense?

<u>Count Two</u>:

  <u>First</u>:  On or about, December 30, 2024, did you knowingly distribute an item or items of child pornography?

  <u>Second</u>:  Was the item transported, shipped, or mailed in interstate or foreign commerce, including by computer; and

  <u>Third</u>:  When you distributed the item, did you believe the item contained child pornography?

<u>Count Three</u>:

  <u>First</u>:  On or about, January 1, 2025, did you knowingly distribute an item or items of child pornography?

  <u>Second</u>:  Was the item transported, shipped, or mailed in interstate or foreign commerce, including by computer; and

  <u>Third</u>:  When you distributed the item, did you believe the item contained child pornography?

<u>Count Four</u>:

  <u>First</u>:  On or about, January 24, 2025, did you knowingly transport in interstate or foreign commerce an item or items of child pornography?

  <u>Second</u>:  When the item or items were transported, shipped, or mailed in interstate commerce did you believe the item(s) were child pornography?

<u>Count Five</u>:

  <u>First</u>:  Did you knowingly possess an item or items of child pornography on January 24, 2025, in the Middle District of Florida?

  <u>Second:</u>  Had the item(s) of child pornography been shipped

      and transported using any means and facility of interstate and foreign commerce?

Third:  When you possessed the item(s), did you believe the item(s) were child pornography?

Fourth:  Did the visual depiction involve a prepubescent minor or a minor who had not attained 12 years of age?

FACTUAL BASIS

On December 29, 2024, while acting in an undercover capacity, a detective with the Orange County Sheriff's Office (UCA) created a post on the social media application "Hush." The post contained a photo of a minor child and the text "Can anybody get my kid into disney?". At approximately 03:20 p.m. EST the UCA received a message from a user utilizing the username "Salmon_struggle," later identified as Canadian national James HJELMELAND. HJELMELAND started the conversation on Hush and asked how old the notional child of the UCA was. The UCA responded that she was 12 years old. HJELMELAND then offered to take the notional child to Disneyworld and stated he was not from Orlando but would take a trip down to Disneyworld. HJELMELAND stated he was looking to take a trip in January anyway and "a cute 12 yr old girl would be a great reason to travel and come visit" and asked for a picture of the notional child.

The UCA expressed concerns over the safety of utilizing the Hush application and they discussed switching to another means of communication. HJELMELAND ultimately suggested utilizing the encrypted application, Teleguard. The

conversation continued via Teleguard with HJELMELAND utilizing the username Spreader94.

The first message from HJELMELAND on Teleguard was "Hey there, from hush?" HJELMELAND then asked again for a picture of the notional child and shared a photo of himself. HJELMELAND stated he would be interested in "doing a 'sugar daddy' kind of arrangement with her…" HJELMELAND later clarified this meant taking the notional child out on dates, trips, or fun events in exchange for her "physical affection and such." HJELMELAND specifically mentioned sending the notional child lingerie and getting a photo of her wearing it.

HJELMELAND stated, "physical photos would be hot" and that he had done that with another female minor when she was 14 years old. HJELMELAND further explained he would buy that minor clothes, lingerie and sex toys and she would send nudes and videos of her using the sex toys. HJELMELAND stated he first had sex with that minor when she was 15 years old, and he is 5 years older than her. HJELMELAND stated the sex was "great" but would "love to have sex with younger tho". HJELMELAND stated his preferred age range would be 10-13 years old. HJELMELAND acknowledged that having sex with the minor had been illegal.

HJELMELAND stated he has continued the sexual relationship with that minor from that time until present day. To substantiate this claim, HJELMELAND provided the UCA multiple videos of a female involved with sexual acts with an unknown male.

7

Later in the conversation, the following exchange occurred on or about December 29, 2024:

**UCA:** Can j ask something…I'm kinda letting you into our world a little. How do I know I can trust you

**HJELMELAND:** Because I'd like to fuck your daughter, the fact she is underage is a turn on for me.

**UCA:** I mean how do I know you aren't saying this just to fantasize and ghost me. Or turn me in

**HJELMELAND:** I'd be screwing myself over if I did

**UCA:** As much as I am curious to talk more I still got to be a dad and be cautious

Not really, you could just be saying this is a fantasy right?

It's just words

**HJELMELAND:** I'm admitting to be into underage girls, having watched child porn.

Etc

**UCA:** I'm exposing my actual kid

I guess I'm sorry nothing against you at all

**HJELMELAND:** I could dig some out of me fucking my little sister

**UCA:** I thought you said it was gone

**HJELMELAND:** It's not on this phone, but i have some on my tablet still.

8

**UCA:** oh

Idk it's up to you

**HJELMELAND:** Would you send some of your daughter?

If I sent some of my sister.

As the conversation continued, HJELMELAND assured the UCA that the application is safe and "super secure on encryption," commenting "I've watched CP thru here before". HJELMELAND further asked the UCA if sending a video of a young girl naked would reassure him.

HJELMELAND asked the UCA about his sexual history with the notional child and informed the UCA that he (HJELMELAND) thinks sex ed for young girls should be "their dad teaching them how to fuck" and the ideal age would be 7-8 years old.

Later that night, the UCA asked HJELMELAND if the sugar daddy thing is actually happening, and HJELMELAND said he would like it to and acknowledged "it would be a huge risk for me as well coming down intending to fuck and underage girl after all". The UCA brought up the idea of using fake names and HJELMELAND suggested "Uncle James" for him, and stated he is 30 years old.

HJELMELAND described his preferred Child Sexual Abuse Material (CSAM) as girls 8-13 years old sucking cock and getting fucked. In response to the UCA stating he never really explored the realm of CSAM because he has his own source, HJELMELAND stated, "fair I always thought of having a daughter for just

9

that reason". HJELMELAND stated he would watch toddler CSAM but "wouldn't want to fuck younger".

HJELMELAND stated if he came to Orlando, Florida, he would like to take the notional child on trips and shopping in exchange for the notional child doing photo shoots with lingerie and toys, preforming oral sex on him, and allowing him to have sex with her.

HJELMELAND asked if the notional child is on birth control and if the UCA would be ok with him not using a condom. HJELMELAND offered to get tested just before coming down. Ultimately, HJELMELAND agreed to not ejaculate inside of the notional child's vagina, mouth, or eyes.

HJELMELAND asked the UCA to send a picture of the notional child and offered to send "some obvious CP tonight afterwards for you to …. stroke to." On or about December 30, 2024, the UCA sent HJELMELAND a photo of the notional child[1] with HJELMELAND's name written on her body as he requested. The UCA also sent an image of the notional child wearing a mismatched bathing suit with "Hi Uncle James" written on her stomach. In response to the photo and subsequent conversation, HJELMELAND stated "Yes so hot", I got to see it, got me hard tbh. She is very cute." and "I'd love to be her sugar daddy".

---

[1] The media of the notional child in this case were created by taking photos and videos of an OCSO deputy and Orlando Police Department (OPD) officer. Some of these media files were edited and age regressed to portray them as a minor child.

10

On December 30, 2024, HJELMELAND sent a 1-minute video which depicted a pubescent female under the age of 18 rubbing her vagina through her underwear before taking off all of her clothes and masturbating.

Later in the conversation, the UCA told HJELMELAND it's not too late to walk away. HJELMELAND replied, "oh it's definitely what I want". HJELMELAND gave the UCA additional guidance on how to introduce the idea of him to the notional child to make her comfortable ahead of his arrival. HJELMELAND told the UCA they will need to take some risks for this to work and that there is an equal risk of jail time. HJELMELAND described his concern about traveling to Orlando and the UCA getting cold feet.

On or about January 1, 2025, HJELMELAND discussed his work schedule and when he could travel to Orlando, Florida. HJELMELAND discussed the CSAM he watched the previous night depicting girls as young as 7 or 8 years old. Later that night HJELMELAND stated he keeps CSAM on his tablet, inside the Android secure folder which is password protected. HJELMELAND elaborated that if the password is entered incorrectly too many times in the secure folder it will delete all of the contents.

HJELMELAND asked for more pictures of the notional child and said in exchange he would send a "… short clip of a 9/10 yr old girl sucking her daddy's cock." The UCA sent a picture of the notional child and HJELMELAND sent a 25-second video which depicted a prepubescent female performing oral sex on an adult male.

11

Between on or about January 5, 2025, through on or about January 6, 2025, HJELMELAND discussed the fact that he wanted to come to Orlando sooner rather than later. HJELMELAND acknowledged that he's taking a big risk in case the UCA gets cold feet or law enforcement is waiting for him. HJELMELAND told the UCA he looked into flights to Orlando, Florida later in January. The UCA gave HJELMELAND another opportunity to back out and HJELMELAND confirmed he wanted to move forward. HJELMELAND told the UCA he was looking at flights from January 24-28, 2025, and laid out a potential schedule for the time he would be there.

HJELMELAND told the UCA the details of a potential flight to Orlando, FL would have him arrive around 5:00 p.m. on January 24, 2025. Law enforcement conducted a search of available flights and identified WestJet flight WS1272 from Calgary, Alberta, Canada to Orlando, Florida arriving at 5:04 p.m.

HJELMELAND and the UCA continued to discuss the logistics of HJELMELAND's upcoming trip. HJELMELAND asked the UCA for the notional child's clothing size and then told the UCA he bought the notional child two Stitch thongs, a pair of Stitch yoga shorts and a workout top.

HJELMELAND asked the UCA "We are 100% doing this right?" HJELMELAND then informed the UCA he had just booked his flight, so he was 100% in.

On or about January 15, 2025, HJELMELAND and the UCA discussed the rules and limits surrounding HJELMELAND having sex with the notional child.

12

HJELMELAND told the UCA he would like to take pictures and videos of himself having sex with the notional child. HJELMELAND stated he would bring down a USB with him to store the CSAM he wanted to create with the notional child.

On or about January 16, 2025, HJELMELAND and the UCA continued to discuss the rules and limits surrounding HJELMELAND having sex with the notional child.

On or about January 18, 2025, the UCA sent a video of him "telling the notional child" that HJELMELAND was coming to visit her and would take her to Disney. HJELMELAND had asked for this video multiple times previously. After the video was sent, HJELMELAND stated it made him feel a lot more comfortable about traveling to Orlando. HJELMELAND stated "It definitely help me feel alot more comfortable I was getting pretty worried and starting to second guess things. Not second guessing that it was something I wanted to do. But there is definitely a lot of risk for me coming down. And having that proof that this is legit and we are on the same page is like a huge weight off my shoulders."

On or about January 21, 2025, HJELMELAND confirmed he still planned to travel to Orlando to have sex with the notional child and stated he had just gotten an STI test done. HJELMELAND and the UCA then discussed making sure they had a matching backstory and what that was. HJELMELAND asked the UCA to pick up condoms for him because he did not want to explain them at the airport. HJELMELAND mentioned being ok with creating CSAM with the notional child as long as they do not include his face or identifying tattoos.

13

On or about January 24, 2025, HJELMELAND departed for Orlando. After the plane landed at the Orlando International Airport, CBP asked to see his passport and then he was arrested. Law enforcement seized his Galaxy S24 phone from his person and conducted a border search of the device. A full forensics extraction was done on the device and 338 images and 117 videos of CSAM were located on the device. Additionally, after seizing the device, law enforcement sent two test messages from the UCA account to HJELMELAND using Teleguard. Those messages appeared on the seized device, confirming that HJELMELAND used the Galaxy S24 to communicate with the UCA. Thus, HJELMELAND used the Galaxy S24 to commit the offenses charged in Counts One, Four, and Five.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: /s/
Kaley Austin-Aronson
Assistant United States Attorney
Florida Bar No. 104705
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: kaley.austin-aronson@usdoj.gov

U.S. v. JAMES HJELMELAND                Case No. 6:25-cr-35-CEM-UAM

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

David Haas, Esq.

/s/
Kaley Austin-Aronson
Assistant United States Attorney
Florida Bar No. 104705
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail: kaley.austin-aronson@usdoj.gov