UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                              CASE NUMBER: 6:25-cr-35-CEM-NWH

JAMES HJELMELAND,

      Defendant.
_____/

**POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING
FACTORS AND INCORPORATED SENTENCING MEMORANDUM**

COMES NOW, the Defendant, JAMES HJELMELAND, pursuant to 18 U.S.C. § 3553(a), hereby files his Position with Respect to Sentencing Factors and Sentencing Memorandum which he respectfully requests this Honorable Court to exercise its discretion and impose a sentence below that suggested by the advisory Sentencing Guidelines.

There are substantive Sentencing Guidelines objections that are discussed herein. Other than the objections and corrections contained herein, Mr. Hjelmeland adopts the Presentence Report.

**INTRODUCTION**

As reflected in his guilty plea, Mr. Hjelmeland acknowledged that he freely and voluntarily entered because he was in fact guilty. When considering all the factors of the offenses, his acknowledgment of responsibility, and his remorsefulness, we respectfully request that this Court impose a sentence of 10 years' imprisonment. Such a sentence is

1

one that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing as required by 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552, U.S. 85, 101 (2007). A sentence of 10 years' imprisonment will satisfy the statutory goals of sentencing and will constitute a sentence that reasonably provides just punishment, protects the public, promotes respect for the law, affords adequate deterrence and promotes rehabilitation as required by 18 U.S.C. § 3553(a)(2).

This memorandum:

(1)     addresses the factors set out in 18 U.S.C. § 3553(a), which the Court must consider in determining the particular sentence to impose;

(2)     incorporates character letters from friends, family and/or colleagues who praise the Defendant's good character and kindness; and

(3)     explains why a Guidelines sentence would be unreasonably excessive.

## I.     *BOOKER* AND 18 U.S.C. § 3553(A)

The decision of the United States Supreme Court in *Booker* has rendered the United States Sentencing Guidelines "effectively advisory." *U.S. v. Booker*, 125 S. Ct. 738, 759-67 (2005). Pursuant to *Booker,* sentencing courts are required to consider a Defendant's guideline range, but may "tailor the sentence in light of other statutory concerns as well." *Id.* at 767 *(citing* 18 U.S.C. § 3553 (a)).

As a result of *Booker* federal district courts must consider the seven factors set forth by 18 U.S.C. § 3553 (a) in determining a sentence:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed -

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    [the applicable Sentencing Guidelines];

(5)    any pertinent [Sentencing Guidelines] policy statement;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victim of the offense.

Moreover, § 3553(a) and the 'parsimony provision' mandate that the district court "impose a sentence sufficient but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2).  Sufficiency of a sentence rather than excessiveness is echoed in 18 U.S.C. § 3582, which recognizes that "imprisonment is not an appropriate means of promoting correction and rehabilitation."

## II.    APPLYING THE FACTORS CONTAINED IN 18 U.S.C. § 3553(a)

### A.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

#### *Circumstances of the Offense*

Mr. Hjelmeland entered an open plea to Indictment charging Count 1: Attempted Coercioin and Enticement of a Minor, Counts 2-3: Distribution of Child Pornography, Count 4: Transportation of Child Pornography, Count 5: Possession of Child Pornography. PSR ¶ 1-6.  The facts surrounding the charges reflect that, between December 29, 2024 and January 24, 2025, Mr. Hjelmeland communicated with an undercover agent about having

sex with a notional child, sent CSAM images to the undercover, and traveled from Canada to Orlando to intimately share the notional child with "the father".  Mr. Hjelmeland has zero prior convictions and has a Criminal History of I.  PSR ¶ 75.

The evidence as set forth in the Pre-Sentence Report is consistent with the above description.

### *History and Characteristics of the Defendant*

Mr. Hjelmeland is 31 years of age and has never been arrested. PSR ¶ 75-78.  His only involvement with criminal courts occurred as a victim of his mother's and father's abuse.  His background and life history are offered in support of his request to vary and depart from the advisory Sentencing Guidelines.

Born in Brandon Manitoba, Canada, Mr. Hjelmeland's childhood was filled with physical, mental, and sexual abuse.  His siblings were similarly abused.  The horrific details of the decades-long abuse is briefly summarized in a few paragraphs in the PSR.  PSR ¶ 82-87.  These measly six paragraphs do little to capture the trauma he endured or the warped definition of "love" that Mr. Hjelmeland learned.  Nevertheless, Mr. Hjelmeland graduated from high school and went on to study electrical engineering.  He earned his electrician's license and was gainfully employed in Canada prior to his arrest.  PSR ¶ 103.  Mr. Hjelmeland does not have any children.

When Mr. Hjelmeland's brother tragically died in a car accident in 2023, his downward spiral began to worsen.  As described in ¶ 96 and Dr. Quinones' evaluation, Mr. Hjelmeland's pervasive neglect was developmentally harmful resulting in an adult who was deprived of appropriate psychological, emotional or behavioral stability.  There's little doubt as to <u>why</u> Mr. Hjelmeland committed the offenses – his childhood taught him the

behavior.  The only question is whether he will continue to driven by his childhood trauma or whether he will find the courage not to be driven by it in the future.  He has chosen the more difficult path - to confront the reality of his childhood trauma, to self-correct the purported "love" he learned that was shrouded in abuse, and to seek intensive counseling so that he does not re-offend when he is deported back to Canada.

Mr. Hjelmeland has limited family who has not abused him but the family and friends that he does have understand what he endured and value him as a beloved member of their community as demonstrated by the letters attached to this Memorandum.  See Exhibit 1.  Those who know Mr. Hjelmeland and support him overwhelmingly demonstrate the true content of Mr. Hjelmeland's character as they can see the person he wants to become.

Mr. Hjelmeland has no history of drug or alcohol abuse.  Understanding why Mr. Hjelmeland became the person who committed these offenses is not difficult to decipher. In addition to intensive sex offender counseling, Mr. Hjelmeland strongly believes he would benefit from a mental health evaluation and treatment.  He knows this will not be an easy process but he has already researched options in Canada where he can get the help he needs.

Canada has a sex offender registry and Mr. Hjelmeland will be required to register upon his return as well as following the Canadian restrictions that come with a conviction of this type – even if it is a conviction in the United States.  In addition to the National Sex Offender Registry (NSOR)[1], as of January 2026, Canada now has a High Risk Child Sex

---

[1] https://www.justice.gc.ca/eng/rp-pr/csj-sjc/jsp-sjp/arnsor-mlrnds/p2.html

Offender Database[2] that is publicly accessible.

### a. Criminal History

Mr. Hjelmeland has a criminal history score of zero. PSR ¶ 75. A consideration for this Court to consider is the length of time in which he refrained from the commission of any crime as it "is a factor that is critical to a court's determination of a sentence it should impose." *See United States* v. *Ward*, 814 F. Supp. 23 (E.D. Virginia 1993) (recognizing the validity of a downward departure below the sentencing guidelines per USSG § 5K2.0 because the sentencing guidelines fail to consider the length of the time encompassing a defendant's criminal history).

Mr. Hjelmeland, at the age of 31, has never been to prison or served even a limited jail sentence. This factor should be given some weight when considered, along with his history of being abused.

### b. Mr. Hjelmeland's age and lower risk of recidivism

In determining an appropriate sentence for Mr. Hjelmeland, the Court should take into consideration that he is 31 years old. Generally, individuals over age of 40 show significantly lower recidivism rates when compared to much younger defendants.[3] Further, recidivism rates decline relatively consistently as age increases.[4] Mr. Hjelmeland understands and accepts that he will be sentenced to a minimum of 10 years in prison meaning he will not be released or deported until he is over 40 years old.

In that this Honorable Court must consider deterrence and protection of the

---

[2] https://rcmp.ca/en/news/2026/01/4349297
[3] *See* "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines" at 12, (2004).
[4] http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf

community, Mr. Hjelmeland's lower prospect of recidivism upon release, along with the parsimony principle, weighs in favor of a downward variance rather than incarceration as contemplated by the advisory guidelines.   Facing certain deportation, he will not be permitted to return to the United States in the future.

### B.   The Need for the Sentence Imposed

Section 3553(a)(2) lists the four purposes of sentencing, which can be summarized as: just punishment, deterrence, protection of the public, and rehabilitation.

### a. *Just Punishment*

A downward variance sentence for a 31-year-old man, with no prior convictions, would satisfy the goals of sentencing.  The advisory guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." *See United States* v. *Johnson,* 964 F.2d 124,125 (2nd Cir. 1992).  The Guidelines, as currently scored and grouped, recommend a sentencing range of 210-262 months (17.5 years to 21.8 years).  The Defense requests the statutory minimum mandatory sentence of 10 years.

### b. *Deterrence*

Mr. Hjelmeland can be a productive and beneficial member of Canadian society. He demonstrated as much working as an electrician for several years.  However, this is especially true if applies himself to positive actions, gets intensive counseling, and focuses on living a life not defined by the abuse he suffered.

Mr. Hjelmeland was arrested on January 24, 2025 in this matter and has been detained for over a year in the local jail.  While in custody, Mr. Hjelmeland has had no disciplinary problems.

### c. *Protection of the Public*

Mr. Hjelmeland's risk to reoffend is complicated to predict. His understanding of what a loving relation should be is distorted and dark.  No one suffers the horrific abuses he endured and comes out of it "normal".   However, Canada's sex offender registration requirements are vigorous and he faces decades on it.  With intensive treatment, Mr. Hjelmeland can overcome his past and the consequences of these actions.  He is deeply motivated to overcome his childhood traumas.

Mr. Hjelmeland recognizes and accepts that his future is up to him.  He understands that a period of incarceration is appropriate.  However, he also recognizes and accepts that he will not engage in the same conduct ever again.  Mr. Hjelmeland acknowledges the significance of his childhood trauma as a disease that will follow him for the rest of his life. He does not want to be the person his father was.  While he knew the wrongfulness of his conduct, he now understands why he believed it was still calling out to him and how he must refrain from any such similar conduct in the future.

### d. *Rehabilitation*

With regards to rehabilitation, 18 U.S.C. § 3582 rejects the notion that imprisonment is an appropriate means of promoting correction or rehabilitation:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation,

In following this provision, the advisory sentence contained in Mr. Hjelmeland's PSR would not promote rehabilitation.  A downward variance sentence of ten years of

imprisonment followed by deportation would be the more appropriate sentence for Mr. Hjelmeland.

### C.    The Kinds of Sentences Available

Pursuant to *Booker*, this Honorable Court has significant discretion in fashioning a sentence that is "reasonable" based on § 3553(a), including incarceration and supervised release. In the instant case, a guidelines prison sentence would contravene 18 U.S.C. § 3553(a) and the 'Parsimony Provision' which proscribes the imposition of a sentence that is greater than necessary to achieve the statutory goals as set forth above.

### a.  The Sentencing Guidelines and Guideline Policy Statements[5]

The PSR concludes that Mr. Hjelmeland's Group 1 Adjusted Offense Level for the Attempted Coercion and Enticement Offense (Count 1) would be 30 (97-121 months).  A sentence at the high end of that range roughly equates to the minimum mandatory sentence of 10 years' imprisonment requested by the Defense.

The PSR concludes that Mr. Hjelmeland's Group 2 Adjusted Offense Level for distribution and transportation of child pornography is 37 (210-262 months).  The Defense has raised substantive objections to the scoring in ¶ 56, 58, 59 that, if successful, would reduce the guidelines by as much as 10-levels to 27 (70-87 months).

Specifically, as to ¶ 56, the Defense objects that there was valuable consideration not for pecuniary gain. Specifically, Probation contends that sending images in exchange for non-pornographic images of a notional child and "to demonstrate his own willingness" should result in a 5-level increase.  The Sixth Circuit has held that receiving something of

---

[5]  Pursuant to *Booker*, "District courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Booker*, 125 S. Ct. 759-67.

value in return uses the phrase in exchange for and that an exchange is more exacting that a mere expectation of receipt and, at the very least requires an agreement or mutual understanding between two parties rather than a defendant's personal belief or expectation. Non-pornographic images were sent by the undercover. *See United States v. Oliver*, 919 F.3d 393, 401-404 (6th Cir. 2019); *see also United States v. Reid*, 2025 U.S. App. LEXIS 10302 (11th Cir. 2025) and *United States v. Spriggs*, 666 F.3d 1284 (11th Cir. 2012). These cases support that merely establishing one's own willingness is not an exchange for purposes of valuable consideration.

The Defense objection to ¶ 58 is to preserve the record as the use of a computer is applicable in every conceivable case in today's modern society. The Defense acknowledges it is correctly scored.

The Defense objection to ¶ 59 involves images that were housed in unallocated space on Mr. Hjelmeland's device. In *United States v. Keefer*, 405 Fed. Appx. 955 (6th Cir. 2010), it was held that images found in the computer's unallocated space to apply this enhancement was improper. The Government had to establish that, at some point, the defendant knowingly accessed with intent to view each of the 600 or more images. *Id.* at 958. The Defendant acknowledged, by way of his guilty plea, that he possessed child pornography; however, there was no agreement as to the number of images largely due to the number of images recovered from unallocated space. *See also United States v. Pruitt*, 638 F.3d 763 (11th Cir. 2011). The forensic report provided by the Government demonstrates the images were in cache but does not detail which images were in which cache. Additionally, the BDSM enhancement is wrongfully included as well as any such images only recovered from cache. There is no information in the forensic report detailing when the images were viewed or downloaded and there is no information about where the

images were obtained (ie. file sharing or peer-to-peer sharing).

The sentencing calculations also do not consider the timely entry of the plea, the discussions contained herein, and Mr. Hjelmeland's strong commitment to rehabilitation and the other mitigation discussed herein. These mitigating factors are acknowledged in the PSR ¶ 128, but are given no weight, in Probation's scoring. A sentence of 10 years' imprisonment that provides for a downward variance in this cause would be reasonable and just.

### b. Need to Avoid Unwarranted Sentence Disparities Among Defendants

There are no co-defendants.

### c. The Need to Provide Restitution to any Victim of the Offense

There are identifiable victims to whom restitution is owed for the commission of the offense. There is no objection to the amount of restitution.

### III.    CONCLUSION

For the reasons stated herein, and those presented at the sentencing hearing, Mr. Hjelmeland respectfully requests that this Honorable Court exercise its discretion and impose a downward variance. Mr. Hjelmeland requests that he be given a 10 year sentence because that is reasonable but not greater than necessary and accounts for the strong possibility that he can contribute to Canadian society.

Respectfully Submitted,

*/s/ David Haas*
David Haas
Haas Law, PLLC
Attorney for the Defendant

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 12, 2026, I electronically filed the foregoing, with the Clerk of the Court, by using the CM/ECF system, which will send a Notice of Electronic Filing to the following the Government.

*/s/ David Haas*
David Haas
Haas Law, PLLC
Attorney for the Defendant
201 S. Orange Avenue, Suite 1017
Orlando, Florida 32801
Telephone:  (407) 755-7675
Email: David@HaasLawPLLC.com